IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD COSS, | : | CIVIL ACTION NO. **1:CV-10-2462** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| LACKAWANNA COUNTY PRISON, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On December 1, 2010, Plaintiff, Edward Coss, currently an inmate at the State Correctional Institution Huntingdon, Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed a civil rights action with this Court, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also raises state law claims. Plaintiff was formerly confined at Lackawanna County Prison ("LCP") and his present claims relate to his confinement at LCP. On December 13, 2010, Plaintiff also filed an Motion for Leave to Proceed *in forma pauperis*. (Doc. 6).[1]

Jurisdiction of this Court over Plaintiff's civil rights action is pursuant to 28 U.S.C. §1331 and §1343. Plaintiff seeks the Court to exercise its supplemental jurisdiction over his state law claims under §1367.

Plaintiff names ten (10) Defendants in his Complaint. Specifically, Defendants are: Lackawanna County Prison; Janine Donate, Warden, Lackawanna County Prison; Sgt. Issac Hebron; John Doe, Employee of Lackawanna County Prison; Mahoney, Employee of Lackawanna County

---

[1] Plaintiff Coss also has a §2254 habeas petition pending with this Court. *See Coss v. Lawler*, Civil No. 4:CV-10-1803, M.D. Pa.

Prison; Corrections Officer ("CO") Tony Balucci; CO Bloom; Mike Washo, Lackawanna County Commissioner; Corey O'Brien, Lackawanna County Commissioner; and Al Munchak, Lackawanna County Commissioner.

## II. Allegations of Complaint.

Plaintiff alleges that on November 29, 2008, he was an inmate at LCP. Plaintiff avers that inmate Atkins tried to attack him and inmate Christiano with an 8-inch metal "whack," and that he was able to thwart the attack by punching Atkins. Plaintiff avers that he immediately informed Defendant CO Bloom about the incident. Plaintiff states that Defendant CO Bloom witnessed his location and the location of inmates Christiano and Atkins. Plaintiff avers that he was taken to the medical department and examined by the nurse, and that he was informed by several prison staff that he was justified in defending himself against Atkins.

Plaintiff avers that an hour after the incident he was confined in the prison restricted housing unit ("RHU") pending an investigation. Plaintiff avers that he was later served with a misconduct and charged with fighting regarding the November 29 incident. Plaintiff states that Defendant CO Balucci served the misconduct on him. At this time, Plaintiff alleges that he requested a witness form from Defendant CO Balucci so that he could have witnesses appear at his disciplinary hearing to defend against the fighting charge. Plaintiff alleges that Defendant CO Balucci told him he would be back with the witness form.

Plaintiff then avers as follows:

> 31.   Plaintiff, specifically requested from officer Balucci at the time he served misconduct's a (Witness) form, so that he could state the witnesses, that he needed to appear at his hearing in order to adequately defend against the charge of fighting.

32.     Plaintiff was advised by Balucci, that he would return back to Plaintiff's cell with the requested (Witness) form.

33.     Plaintiff spoke to numerous other Officer's (sic) and complained that Balucci never returned with the (Witness) form, and was told by these officer's (sic) that they would contact him because Balucci is the only person assigned the detail of serving misconduct's and (witness) forms.

34.     Plaintiff was brought to his misconduct hearing and immediately requested from both Hebron, and Mahoney or John Doe hearing examiners, that he wished to call (4) witnesses, on his behalf, that would prove that he defended himself, and that he did not engage in fighting.

35.     Plaintiff was asked by Hebron the names of witnesses, and plaintiff responded with C.O. Bloom, C.O. Bob, who esco[r]ted petitioner to the medical Dept., at which time plaintiff could not recall his last name as Cornell, also, Christiano, and the Officer who worked in the Central Control, that plaintiff reported incident to while on intercom.

36.     Both defendants Hebron, and Mahoney or John Doe, had a brief (10) second discussion, and decided that because plaintiff did not submit the required (Witness) form, with all named witnesses included prior to hearing date, that he could not have any witnesses to testify on his behalf.

(Doc. 1,¶'s 31.-36.).

Further, Plaintiff alleges that he objected at his disciplinary hearing stating he was not given a witness form prior to the hearing, and he alleges that he advised the hearing examiner that the misconduct form violated his constitutional rights since it did not have a section providing the inmate with a witness form.

Additionally, Plaintiff avers:

39.     Despite plaintiff's claims of not being provided the witness form on the date of service of misconduct or prior to hearing and being denied any witnesses on his behalf Hebron, and Mahoney or John Doe, found plaintiff guilty of fighting.

40.     Plaintiff filed his appeal to the Warden, and that said was never

3

addressed prior to his departing Lacka. Co. Prison on or about January 21, 2009.

41.    Plaintiff also filed a grievance relating to the misconduct and witness form procedures, but that same was not addressed prior to Plaintiff's departure as well.

(*Id.*, ¶'s 39.-41.).[2]

Plaintiff claims that the alleged conduct of the LCP Defendants by denying him a witness form and by denying him witnesses at his disciplinary hearing violated his Fourteenth Amendment due process rights.  With respect to the three County Commissioner Defendants, Plaintiff alleges that they "are charged with the over seeing and hiring of prison Warden." (*Id.*, ¶ 43.).   Further, Plaintiff alleges that all Defendants acted in conspiracy to deny him of his right to receive a fair disciplinary hearing and he states:

44.    Plaintiff believes and therefore avers that all parties have acted in concert or a civil conspiracy to deny plaintiff of his Constitutional right to receive a fair and meaningful administrative prison misconduct hearing, and that by denying his request for witness form, and then verbal request to have witnesses appear clearly violated the meaning of the Fourteenth amendment, and any chance of plaintiff receiving the hearing he was entitled to.

(*Id.*, ¶ 44.).

In Count One, Plaintiff raises his Fourteenth Amendment due process claim against all Defendants.  (*Id.*, ¶'s 46.-49.).

In Count Two, Plaintiff raises his §1983 civil conspiracy claim against all Defendants.  (*Id.*, ¶'s 50.-53.).

---

[2]Plaintiff does not state any reason as to why he did not attempt to pursue his grievances with LCP after he was transferred to a different prison.

In Count Three, Plaintiff raises a state law claim for intentional infliction of emotional distress ("IIED"). Plaintiff avers, in part, as follows:

> 59.     Defendants conspired to deny plaintiff of his right to have witnesses during his prison misconduct hearing.
>
> 60.     Defendants' conspired to not provide plaintiff with witness form in order to timely request witnesses to be present and to testify during his hearing in plaintiff's defense against fighting charges.
>
> 61.     Warden Donate intentionally failed to answer plaintiff's timely appeal from finding of guilt by hearing examiner in order that plaintiff could be relieved of said misconduct and avoid collateral fallout, when Lacka. Co. Prison provided Pa. Dept. of Corrections with copy of said misconduct, and that misconduct adversely affected plaintiff during both prison programming participation, and resulted in plaintiff receiving from Pa Board of Probation and Parole a (Hit) and denial of parole due to said misconduct report and serious nature of fighting infraction.

(*Id.*, ¶'s 59.-61.).

As relief, Plaintiff requests compensatory and punitive damages. Plaintiff sues all Defendants in their individual and official capacities. (*Id.*, ¶ 45.). However, Plaintiff can only seek monetary damages from the state actor Defendants in their individual capacities.[3]

We now screen Plaintiff's pleading as we are obliged to do.[4]

---

[3]As stated, Plaintiff indicates that he seeks money damages from each named Defendant in both their individual and official capacities. To the extent that he seeks monetary damages from the Defendants, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

[4]Plaintiff indicates that he has not fully exhausted his available administrative remedies at LCP with respect to his appeal of the guilty finding as his disciplinary hearing. Plaintiff also

**III. PLRA.**

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 6). The Prison Litigation Reform Act of 1995,[5] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[6] Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

---

states that he did not exhaust his grievance at LCP regarding the lack of a witness form when he was served with the misconduct charge. We note that Plaintiff is required to exhaust all of his administrative remedies available through the LCP grievance procedure with respect to each of his claims prior to filing an action in federal court. *See Spruill v. Gillis*, 372 F. 3d 218, 222 (3d Cir. 2004); *Dortch v. York County Prison*, 2009 WL 159196, *4 (M.D. Pa.). Also, we note that exhaustion is an affirmative defense for Defendants to raise. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Dortch*, 2009 WL 159196, *4 ; *Spencer v. Zimmerman*, 2009 WL 2994227 (M.D. Pa.).

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[6]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts. The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account. (Docs. 6, 7 and 8).

**IV. Section 1983 Standard.**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[7] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

---

[7]Plaintiff alleges in his pleading that the Defendants are employees of the LCP and Lackawanna County. (Doc. 1, p. 3). This is sufficient to show that Defendants are state agents.

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") citing *Rode, supra*.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

## V.  Motion to Dismiss Standard.

In  *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp*. *v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other

words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

## VI. Discussion.

### 1. Defendant LCP

Plaintiff has named LCP as a Defendant and he alleges that LCP is a County-owned prison.

We find that Defendant LCP should be dismissed from this action because "a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." *Ayers v. Bradford County,* 2009 WL 801867, *5 (M.D. Pa. 3-25-09). In *Ayers*, the Court stated:

> Ayers is unable to maintain the action against BCCF [Bradford County Correctional Facility] because a prison or correctional facility is not a "person" that is subject to suit under federal civil rights laws. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see Slagle v. County of Clarion,* 435 F.3d 262, 264 n. 3 (3d Cir.2006) (affirming on other grounds and observing that "[t]he District Court dismissed Clarion County Jail as a defendant in this case, stating 'it is well established in the Third Circuit that a prison is not a "person" subject to suit under federal civil rights laws' "); *Kelly v. York County Prison,* No. 08-1813, 2008 WL 4601797, at *2 (M.D.Pa. Oct.15, 2008) (noting that a "prison or correctional facility is not a person within the meaning of § 1983" and "the York County Prison is clearly not a person and may not be sued

under § 1983"). *Jackson v. Pennsylvania,* No. 08-1297, 2008 WL 4279544, at *1 (M.D.Pa. Sept.11, 2008) (holding that a county prison is not a "person" within the meaning of § 1983); *Meyers v. Schuylkill County Prison,* No. 04-1123, 2006 WL 559467, at *8 (M.D.Pa. Mar.7, 2006) (holding same). BCCF has no existence apart from the government and cannot be considered a person for purposes of maintaining a civil rights action.

Thus, we will recommend that Defendant LCP be dismissed from this action.

### 2. *Defendant County Commissioners*

Plaintiff states that he named County Commissioners Washo, O'Brien and Munchak[8] as Defendants since they over see and hire the LCP warden. (Doc. 1, ¶ 43.). We find that Defendants County Commissioners Washo, O'Brien and Munchak should be dismissed for lack of personal involvement with respect to Plaintiff 's constitutional claims. We find that Plaintiff has named Defendants County Commissioners Washo, O'Brien and Munchak only based on *respondeat superior* which is not an acceptable basis to hold these Defendants liable in a civil rights action. *See Rhines v. Bledose,* 2010 WL 2911628, *2 (3d Cir.).[9] As discussed above, Plaintiff does not specifically state the personal involvement of Defendants County Commissioners Washo, O'Brien and Munchak with respect to any of his constitutional claims.

---

[8] Plaintiff incorrectly spells Defendant Munchak's name.

[9] While Plaintiff attempts to hold Defendants Washo, O'Brien and Munchak liable based on their positions as County Commissioners, it is well settled that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior. See Ascenzi v. Diaz,* 2007 WL 1031516, *3 (M.D. Pa.)("supervisory personnel are only liable for the §1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct")(citations omitted).

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d cir. 12-14-10).

In his Complaint, Plaintiff is clearly attempting to assert his claims against Defendants County Commissioners Washo, O'Brien and Munchak based only on *respondeat superior*. Further, Defendants County Commissioners Washo, O'Brien and Munchak are not sufficiently stated to have been personally involved with any cognizable violation of Plaintiff's constitutional rights. Nor are Defendants Washo, O'Brien and Munchak alleged to have directed the LCP Defendants to violate his rights. *Id.*

The Supreme Court in *Iqbal* repeated the personal involvement necessary in a §1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court, citing *Iqbal,* stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 570 (2007)).

"Innis's allegation against Wilson also fail because Innis is attempting
to establish liability based on supervisory liability. *See Rode v. Dellarciprete,*
845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely
on the operation of respondeat superior, as a defendant must have
personal involvement in a civil rights action). Innis does not allege that
Wilson had personal knowledge of his injury and subsequently acted with
deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these
claims were properly dismissed."

In *Saltzman v. Independence Blue Cross,* 2009 WL 1606887, *4 (E.D. Pa.), the Court stated:

The Court in *Iqbal* explained that, although a court must accept as true
all of the factual allegations contained in a complaint, that requirement
does not apply to legal conclusions; therefore, pleadings must include
factual allegations to support the legal claims asserted. *Id.* at 1949, 1953.
"Threadbare recitals of the elements of a cause of action, supported
by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,*
550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224,
232 (3d Cir.2008) ("We caution that without some factual allegation in the
complaint, a claimant cannot satisfy the requirement that he or she provide
not only 'fair notice,' but also the 'grounds' on which the claim rests."
(citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion
to dismiss, a plaintiff must plead "factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S.
at 556).

In order to state an actionable claim under §1983, as indicated above, a plaintiff must allege
that a person has deprived him of a constitutional right, and that the person who caused the
deprivation acted under color of state law. *See Holocheck v. Luzerne County Head Start, Inc.*, 385
F. Supp. 2d 491, 498-499 (M.D. Pa. 2005); *Ayers*, 2009 WL 801867, *5; *Santiago, supra.* Plaintiff
has not alleged a causal connection between Defendant Commissioners' direction and the violation
fo his constitutional rights by LCP Defendants. *See Santiago, supra.*

Thus, we will recommend that Defendants County Commissioners Washo, O'Brien and Munchak be dismissed entirely from this action.  *See George, supra; Ayers, supra; Santiago, supra.*

### 3. *Defendant Warden Donate*

Plaintiff names Donate as a Defendant since she was the warden at LCP during the relevant times of his action.[10]  Plaintiff alleges that he filed an appeal, *via* a grievance, of his disciplinary conviction with Defendant Donate and that it "was never addressed prior to his departing [LCP] on or about January 21, 2009." (Doc. 1, ¶ 40.).  Plaintiff avers that Defendant Donate "intentionally failed to answer [his] timely appeal from finding of guilt by hearing examiner," and that as a result he could not fully exhaust his administrative remedies at LCP regarding his misconduct conviction on the fighting charge.   Plaintiff avers that as a result of the misconduct conviction at LCP, he received a "hit" from the Pennsylvania Board of Probation and Parole denying him parole.  (Doc. 1, ¶ 61.).  We find that Plaintiff has not stated any viable constitutional claim against Defendant Donate.

We find that Plaintiff has named Defendant Donate based on her alleged failure to respond to his appeal of his disciplinary conviction regarding the fighting charge.   The law is well-settled that inmates do not have a constitutional right to a grievance process, and that naming the supervisory Defendants based only on their responses or lack of responses to an inmate's grievance and appeals will subject these Defendants to dismissal.  *Bartelli v. Jones*, 231 Fed. Appx. 129, 132 (3d Cir. 2007)("a state grievance procedure does not confer any substantive constitutional right upon prison inmates.")(citation omitted); *O'Connell v. Sobina*, 2008 WL 144199, * 17 (W. D. Pa.);  *Jones v.*

---

[10]Defendant Donate is no longer the Warden at LCP.

*North Carolina Prisoners's Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977). This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as LCP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005)(Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*. *See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.)(claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures." (citations omitted)).

Further, Plaintiff does not allege that Defendant Donate directed the other LCP Defendants to violate his rights.

Therefore, we will recommend that supervisory Defendant Donate be dismissed entirely since her lack of response to Plaintiff's appeal of his disciplinary conviction is her only alleged personal involvement in this case. *See Santiago, supra*.

*4. Plaintiff's Fourteenth Amendment Due Process Claim is Heck Barred*

Plaintiff avers that Defendant CO Balucci violated his Fourteenth Amendment due process rights by failing to provide him the witness form after he was served with the misconduct so that he could call four witnesses at his disciplinary hearing regarding the fighting charge. Plaintiff avers that Defendant CO Bloom witnessed his location and the location of inmates Christiano and Atkins immediately after the charged fight, and that he was not allowed to call Bloom as a witness at his disciplinary hearing. Plaintiff avers that he asked Defendant hearing examiners, Hebron, Mahoney and Doe, to allow him to call four witnesses at his disciplinary hearing and that these Defendants decided that since Plaintiff did not submit the required witness form prior to the hearing date, he could not have any witnesses testify at his hearing. As a result, Plaintiff states that he was denied a fair hearing and he claims that his disciplinary conviction violated his Fourteenth Amendment due process rights. Plaintiff alleges that as a result of the disciplinary conviction he was confined in the RHU at LCP and he was denied parole by the Pennsylvania Board.

To the extent Plaintiff seeks damages as a result of his claim that he was convicted of the fighting misconduct charge by Defendant Hearing Examiners Hebron, Mahoney and Doe in violation of his Fourteenth Amendment due process rights, and that he was sanctioned to RHU confinement and denied parole with respect to the misconduct report issued against him, we find that such claim is *Heck* barred.

In *Braggs v. Flatt*, 2009 WL 2750120, *4-*5 (W.D. Pa.), the Court stated:

> *Heck v. Humphrey* [512 U.S. 447 (1994) ] and its progeny. In *Heck,* the Supreme Court held that a prisoner could not maintain a § 1983 action for damages under the civil rights laws if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction

15

> or sentence ... unless the plaintiff can demonstrate that the conviction
> or sentence has already been invalidated." 512 U.S. at 487. The Court
> has summarized this so-called "favorable termination requirement"
> by explaining that a "state prisoner's § 1983 action is barred
> (absent prior invalidation)-**no matter the relief sought (damages or equitable
> relief), no matter the target of the prisoner's suit (state conduct
> leading to conviction or internal prison proceedings)**-if success in that
> action would necessarily demonstrate the invalidity of confinement or its
> duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161
> L.Ed.2d 253 (2005). *See also Hill v. McDonough,* 574 U.S. 73 (2006);
> *Muhammad v. Close,* 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004).
>
> Further, in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d
> 906 (1997), the Supreme Court extended *Heck* further by holding that a state
> prisoner's § 1983 action challenging a prison disciplinary sanction and seeking
> "money damages, based on allegations of deceit and bias on the part of the
> decisionmaker that necessarily imply the invalidity of the punishment imposed, is not
> cognizable under § 1983" unless the disciplinary sanction has been overturned or
> invalidated. 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906.

(Emphasis added); *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, *8 (M.D. Pa.); *Arango v. Winstead*, 352 Fed. Appx. 664, 665-666 (3d Cir. 2009); *Taylor v. Scism*, 2010 WL 2470806, *3 (M.D. Pa.).

Additionally, insofar as Plaintiff is deemed as challenging his disciplinary conviction by Defendant Hearing Examiners Hebron, Mahoney and Doe and the sanction to RHU confinement, Plaintiff must file a petition for writ of habeas corpus under 28 U.S.C. §2254 after he exhausts his administrative remedies. Plaintiff cannot challenge his LCP disciplinary conviction and sentence in this § 1983 civil rights action. The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the fact or length of his custody. *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973). Plaintiff, insofar as he is attacking his disciplinary conviction as unlawful, is

implicating relief that may have altered the term of his confinement in prison since he states that it resulted in the denial of his parole by the Pennsylvania Board. *See Muhammad v. Close*, 124 S. Ct. 1303, 1304 (2004 (Per Curiam); *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002).

In *Taylor v. Scism*, 201 WL 2470806, *3, the Court stated:

> To the extent Plaintiff seeks to challenge the loss of the good time credit imposed by the DHO, such allegations are not properly asserted in a civil rights complaint. A civil rights action is not the proper mechanism for challenging the basis of the incident report issued or the alleged due process violations that allegedly occurred during the course of the disciplinary proceedings resulting in the loss of good time. It is well-settled that a civil rights action may not be employed to challenge the fact or duration of a prisoner's confinement or to seek earlier or speedier release. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1975).

Thus, Plaintiff must seek collateral relief regarding his disciplinary conviction at LCP *via* a habeas corpus petition filed under 28 U.S.C. § 2254. To date, Plaintiff does not allege that he had a favorable termination of his LCP disciplinary conviction.[11]

Further, we do not find that sanctioning Plaintiff to RHU confinement violated Plaintiff's Eighth Amendment rights. Plaintiff avers that Defendants' conduct violated, in part, his rights under Eighth Amendment. (Doc. 1, ¶ 63.).[12]

As the *Frazier* Court stated, "[b]eing placed in various forms of disciplinary confinement ... fails to constitute an Eighth Amendment violation. *Swinson v. Dep't of Corrs.*, No. 07-26, 2009 WL

---

[11]We note that Plaintiff's one-year statute of limitations under the AEDPA to challenge his 2008 disciplinary conviction for fighting at LCP in a § 2254 habeas corpus may have expired.

[12]We note that at most Plaintiff was in the RHU at LCP for less than 2 months from November 29, 2008, the time he was charged with fighting, to January 21, 2009, when he left LCP.

33330, at *10 (W .D. Pa. Jan. 5, 2009) (citing *Gibson v. Lynch,* 652 F.d 348, 352 (3d Cir.1981));

*see also Mearin v. Dohman,* No. 06-4859, 2009 WL 3127760, at *11 (E.D. Pa. Sept. 29, 2009)

(finding ten months in SCI-Graterford's RHU not to be a deprivation in violation of the Eighth

Amendment (citing *Griffin,* 112 F.3d at 709)).” *Frazier*, 2010 WL 2040763, *4 .

Moreover, as Plaintiff claims that Defendants Hebron, Mahoney and Doe violated his due

process rights under the Fourteenth Amendment when he alleges that he requested the hearing

examiners to allow his witnesses to testify at his disciplinary hearing and that they denied his

request. Plaintiff avers that he did not receive his due process rights with respect to his disciplinary

conviction and placement in the RHU. As noted, Plaintiff was placed in a cell in the RHU at LCP

for less than two months.

In *Mincy v. Chmielewski*, the Court stated:

> Mincy's contention that his due process rights were violated in the context
> of his misconduct hearing requires a determination of whether he had a
> protected liberty interest and, if so, what process was mandated to protect
> it. *See Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Shoats v. Horn,* 213 F.3d
> 140, 143 (3d Cir.2000). Importantly, due process requirements apply only
> when the prison's actions impose “an atypical and significant hardship on the
> inmate in relation to the ordinary incidents of prison life.” *Sandin,* 515 U.S.
> at 483 (1995). “[T]he baseline for determining what is “atypical and
> significant”-the “ordinary incidents of prison life”-is ascertained by what a
> sentenced inmate may reasonably expect to encounter as a result of his
> or her conviction in accordance with due process of law.” *Griffin v. Vaughn,*
> 112 F.3d 703, 706 (3d Cir.1997)(quoting *Sandin,* 515 U.S. at 486).
>
> Confinement in administrative or punitive segregation is insufficient, without
> more, to establish the kind of “atypical” deprivation of prison life necessary
> to implicate a liberty interest. *Sandin,* 515 U.S. at 486; *see Griffin,* 112 F.3d at
> 706-07 (finding that fifteen month period of administrative custody did not
> deprive prisoner of a liberty interest). The disciplinary sanction at issue, sixty
> days of disciplinary segregation, does not constitute “an atypical and
> significant hardship on the inmate in relation to the ordinary incidents of prison

18

life." *Sandin,* 515 U.S. at 483.

2007 WL 707344,*8-*9 (M.D. Pa.).

As stated, Plaintiff indicates that, at most, he was confined to an RHU cell for less than two months based on the fighting charge, his conviction and the sanction imposed by Defendants Hebron, Mahoney and Doe.

The Third Circuit Court, in the case of *Arango v. Winstead*, 352 Fed. Appx. 664, 666 (3d Cir. 2009), stated:

> Although [the inmate's] due process claim is cognizable under 42 U.S.C. § 1983, to survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, her complaint "must contain sufficient factual matter" to state a plausible claim of a deprivation of a liberty interest protected by the Due Process Clause. *Iqbal,* 129 S.Ct. at 1949. The Supreme Court has recognized that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Asquith v. Dep't of Corr.,* 186 F.3d 407, 410 (3d Cir.1999) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Due process applies only where the conditions of confinement impose "atypical and significant hardship [s] on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Placement in administrative segregation for days or months at a time or transfers to more restrictive custody do not implicate a protected liberty interest. *See Torres,* 292 F.3d at 150; *Fraise v. Terhune,* 283 F.3d 506, 522-23 (3d Cir.2002). Nor does removal from a prison program, as restriction from participation in prison programs is among the conditions of confinement that an inmate may reasonably anticipate during her incarceration. *See James v. Quinlan,* 866 F.2d 627, 629 (3d Cir.1989).[13]

Thus, based on *Mincy and Arango*, we will recommend that Plaintiff's Fourteenth Amendment due process claim against all Defendants be dismissed.

---

[13]Plaintiff Coss also alleges that the disciplinary conviction "adversely affected" his "prison programming participation." (Doc. 1, ¶ 61.).

Moreover, we do not find that Plaintiff has stated an actionable §1983 conspiracy claim against any Defendant. In *Marchese v. Umstead*, 110 F. Supp.2d 361, 371 (E.D. Pa. 2000), the Court held, "central to any conspiracy claim is specific factual allegations that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." We find that Plaintiff fails to make any specific factual allegations against any Defendant with respect to his broad conspiracy claim. Instead, Plaintiff merely makes a legal conclusion as follows:

> Defendants['] conduct and their conspiracy with each other
> as set forth above including the denial of Plaintiff and all other
> inmates that received a misconduct of the right to call witnesses
> on their behalf in order to adequately defend against charges
> brought by prison officials.

(Doc. 1, ¶ 51.).

In order to set forth a § 1983 cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir.1992); *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. *Oatess v. Sobolevitch,* 914 F.2d 428, 432 n. 8 (3d Cir.1990). *See also, Colburn v. Upper Darby Twp.,* 838 F.2d 663 (3d Cir.1988).

The essence of a conspiracy is an agreement or concerted action between individuals. *See D.R. by L.R.,* 972 F.2d at 1377. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal

right. *See id.; Rose,* 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. *Deck v. Leftridge,* 771 F.2d 1168, 1170 (8th Cir.1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation.

In the present case, Plaintiff fails to allege any facts showing a meeting of the minds between any Defendants. Thus, we will recommend that Plaintiff's § 1983 civil conspiracy claim against all Defendants be dismissed.

Finally, since we find that Plaintiff has not stated any cognizable federal claim against Defendants, we will recommend that the Court decline to exercise pendent jurisdiction over his state law IIED claim. *See Verdecchia v. Prozan*, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003).

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that all of Plaintiff Coss's claims against all Defendants be dismissed, and that all Defendants be dismissed entirely from this case since there are no cognizable constitutional claims stated against them. It is also recommended that the Court decline to exercise pendent jurisdiction over his state law IIED claim. It is

additionally recommended that Plaintiff's Motion to proceed *in forma pauperis* (Doc. 6) be granted

solely for the purpose of filing this action.


                                        <u>**s/ Thomas M. Blewitt**</u>
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: January 6, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD COSS, | : | CIVIL ACTION NO. **1:CV-10-2462** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| LACKAWANNA COUNTY PRISON, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 6, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                        **s/ Thomas M. Blewitt**

_____   **THOMAS M. BLEWITT**
                                                     **United States Magistrate Judge**


**Dated: January 6 , 2011**